No. 19,371.

ADA BURHANS SMITH, as Administratrix, etc., *Appellee,* v. J. D. BOWERSOCK, doing business as The Lawrence Paper Manufacturing Company, *Appellant.*

SYLLABUS BY THE COURT.

1. APPEAL—*From Order Overruling Motion for New Trial—Appeal within Six Months.* An appeal may be taken from an order overruling a motion for a new trial within six months after the order is made although more than that time has intervened between the entry of judgment upon the return of the verdict and the taking of the appeal, and all rulings and questions that were open for consideration on the motion for a new trial are open for review on the appeal.

2. PLEADINGS—*Appointment of Administratrix Not Put in Issue by Answer.* The appointment of the plaintiff as administratrix, alleged in a petition, is not put in issue by an answer denying that the plaintiff has capacity to sue and a verification alleging that the facts stated in the answer are true.

3. FACTORY ACT—*Personal Injuries—To What Class of Employees Factory Act Applies—Safeguarding Machinery.* All persons employed or laboring in a manufacturing establishment are entitled to the protection provided for in the factory act (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683) without regard to the nature of their employment, their rank or grade, and it is the duty of the owner or operator to furnish safeguards for dangerous machinery where it is practicable to do so, and if he fails in his duty in this respect he will become liable for the injury and death of any employee, including a superintendent of the factory, which results from the omission

Smith v. Bowersock.

of this duty, and this although the superintendent was authorized to direct and control the details of the business under the supervision of the owner and operator and his managers and although the dangerous character of the machinery and the practicability of safeguarding it was open and obvious; and it is further held, under the evidence in this case, that there is nothing in the relations of the parties or the circumstances of the case to absolve the defendant from liability for the death of the superintendent which resulted from his failure to provide safeguards conceded to have been practicable and necessary to the safety of employees.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed April 10, 1915. Affirmed.

*William B. Brownell,* of Lawrence, *McCabe Moore,* of Kansas City, and *C. F. Hutchings,* of Kansas City, Mo., for the appellant.

*S. D. Bishop,* and *J. H. Mitchell,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Ada Burhans Smith brought this action against J. D. Bowersock, doing business as The Lawrence Paper Manufacturing Company, to recover damages under the factory act (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683) for negligently and carelessly causing the death of Sumner I. Smith, her husband. In her petition plaintiff alleged, substantially, that she was the duly appointed and acting administratrix of the estate of Sumner I. Smith, deceased, having been appointed by an Indiana court, which had probate jurisdiction; that defendant was the owner and operator of The Lawrence Paper Manufacturing Company, at Lawrence; that much machinery, including squeeze rolls, dry rolls and dryer felt rolls, was used in the business of the company; that on November 28, 1911, Sumner I. Smith was employed by defendant as superintendent of his manufacturing establishment, and while

in the discharge of such duty was ordered by one P. A. Dinsmoor, his superior and assistant manager of the establishment, to adjust the squeeze rolls; and that in attempting to comply with Dinsmoor's order Smith fell and was caught between the dryer and dryer felt rolls, and fatally crushed and killed. Plaintiff further alleged that it was practicable to have provided the squeeze rolls, dry rolls and dryer felt rolls with proper and safe guards or screens; that the lack of such guards or screens directly contributed to and was the proximate cause of Smith's death; that at the time of Smith's death he was in perfect health and earning $150 a month; that she was the widow and sole heir at law of Sumner I. Smith; and that because of her husband's death, which resulted from the failure of defendant to properly guard and screen the machinery in the establishment, she was damaged in the sum of $10,000. Defendant answered denying plaintiff's capacity to sue, and alleged that on November 28, 1911, Smith was the superintendent of defendant's manufacturing establishment, and had complete direction of it, including the safeguarding of all machinery in it, and that if Smith was injured and died on November 28, 1911, from the injuries it was because of his own carelessness and negligence in putting his hand into the machinery and attempting to adjust certain squeeze rolls. Defendant also denied the practicability of guarding and screening the rolls and machinery, and that the lack of such guards was the proximate or directly contributing cause of the injury to Smith, and alleged, further, that if the machinery was not properly guarded or screened, Smith, as superintendent, was responsible therefor and assumed the risk thereof. This answer of defendant was verified. On the trial of the case plaintiff offered evidence tending to show her capacity to sue, and also that at the time of Smith's death he was acting under the orders of his superior, Dinsmoor; that it was practicable to guard and screen the rolls, in fact that a

board was put in position to guard the rolls which caught Smith shortly after his injury and death; and that Smith was a kind and affectionate husband, having at the time of his death, an expectancy of life of thirty-two and one-half years and an earning capacity of $1800 a year. Defendant's demurrer to plaintiff's evidence was overruled, and he then undertook to prove that it was impracticable to guard and screen the machinery; that it was the duty of Smith to properly guard and protect the machinery for the prevention of accidents to the workmen; and that a general order for the safeguarding of the machinery had been made by defendant at one time, but had been deferred on the advice of Smith. On June 18, 1913, the jury returned a verdict in favor of plaintiff, fixing the amount of her recovery at $10,000, and on the same day judgment was entered thereon. Defendant's motion for a new trial, filed on June 21, 1913, was overruled on January 17, 1914, and this appeal was taken on March 17, 1914.

Plaintiff has moved for the dismissal of this appeal on the ground that it was not taken within six months after the rendition of the judgment. Under the recent enactment an appeal must be perfected "within six months from the date of the rendition of the judgment or order appealed from." (Laws 1913, ch. 241, § 1.) The code authorizes an appeal from a final order as well as one which grants or refuses a new trial. (Civ. Code, § 565.) The order appealed from in this case is the one overruling the motion for a new trial, and it has been often held that an appeal may be taken from that order within the time limited although more than that time has intervened between the rendition of the judgment and the taking of the appeal. On such appeals all rulings and questions fairly involved in the motion for a new trial are open for review here. (*Osborne, Ex'r, v. Young,* 28 Kan. 769; *Thompson v. Wheeler & Wilson Mfg. Co.,* 29 Kan. 476; *Bates v.*

*Lyman,* 35 Kan. 634, 12 Pac. 33; *Crawford v. K. C., Ft. S. & G. Rld. Co.,* 45 Kan. 474, 25 Pac. 865; *Surety Co. v. Ashmore,* 74 Kan. 325, 86 Pac. 453; *Benefit Association v. Wood,* 78 Kan. 812, 98 Pac. 219.) The questions discussed appear to have been fairly involved in the motion for a new trial, which was refused, and the appeal having been taken within six months from the time.the order denying the motion was made the questions are open for review on this appeal.

It is contended that there was error in the ruling of the court refusing to instruct the jury to return a verdict in favor of the defendant. The contention is based mainly on the claim that the plaintiff was appointed as the administratrix of the estate of Sumner I. Smith by a court of Indiana notwithstanding that the evidence showed that he was a resident of Kansas when he died. In her petition plaintiff alleged that she was duly appointed as administratrix, and the only statement in defendant's answer respecting the appointment was a denial that she "has capacity to sue in said action and demand the relief sought." The verification of the answer was "that the facts therein stated are true." The statement that she had no capacity to sue is a mere conclusion. The facts relating to capacity to sue or showing incapacity to bring and maintain the action were not alleged, and hence no facts were stated and the verification was not such as to put the appointment of the plaintiff in issue. (*Kimble v. Bunny,* 61 Kan. 665, 60 Pac. 746.) In *Caple v. Drew,* 70 Kan. 136, 78 Pac. 427, there was an averment in the petition of an appointment as a guardian and a verified answer denying the averments of the petition, but in the verification it was stated that the denials or contents of the answer were true. It was held that the code contemplates that denials may be verified and that the answer so verified put in issue the averments of the petition relating to appointment. There, however, facts were stated on one side and denials made on the other with

an affidavit that the denials were true.   Here, there is no statement to the effect that the denials were true. The answer contained nothing on the subject beyond the averment that the plaintiff had no capacity to sue, which, as we have seen, was not an allegation of fact, and the mere statement in the verification that the facts stated were true did not put the appointment in issue.   Apart from that consideration, plaintiff offered testimony which tends to support the theory that the legal residence of the Smiths was in Indiana where the appointment was made and that they were only temporarily in Kansas.   The question of the residence of one appointed as administratrix is one of fact (*Livermore v. Ayers,* 86 Kan. 50, 119 Pac. 549), and the jury has decided, upon what appears to be sufficient evidence, that the plaintiff was duly appointed.   The defendant calls attention to a number of facts and circumstances which he claims strongly tend to show that the Smiths were in fact residents of Kansas instead of Indiana, but the finding of the jury has settled the dispute in favor of the plaintiff.   It may be added that it appears from the petition and the proof that the plaintiff is the widow and sole heir of the deceased, and even if she could not be regarded as an administratrix a recovery in her character as a widow might be sustained.   (*Railway Co. v. Mills,* 57 Kan. 687, 47 Pac. 834.)

It is next contended that no recovery can be had by plaintiff, on the ground that Smith occupied the position of superintendent in the paper mill and was not in the class that the factory act was designed to protect, and, further, that the duty of safeguarding dangerous machinery in the mill was not owed by the defendant to Smith.   In his testimony defendant stated that he employed Smith to superintend the plant and to look after the machinery, which involved the safeguarding of it. By his testimony it was shown that about a week before the accident defendant prepared a notice of caution to

his employees in his mill and power plant, his iron works and ice plant, and also the paper mill, in which it was stated that:

"If there is any machinery, dangerous place or tool that you think should be safeguarded, repaired or improved, we will regard it a favor if you will report same at once to the office. It is desired that all employees assist in reducing accidents to the lowest possible point."

This was addressed to every employee of his and was signed by the names of the four different establishments. The notice was posted in each of the manufacturing establishments operated by defendant. The plaintiff calls attention to testimony to the effect that the defendant, who was the owner and operator of the paper mill and other establishments, had Irving S. Hill as manager of his plants and Paul A. Dinsmoor as assistant manager, under whom Smith was acting. The necessity for guards, it was shown, was open and obvious, and that the duty devolved on defendant and his managers to provide suitable machinery and appliances. Although the defendant stated that Smith was employed as an expert paper maker, who was acquainted with machinery used for that purpose, and that defendant and his managers depended on him to attend to the machinery and the details of paper making, the evidence was that neither the defendant nor his managers had ever directed him to screen or guard this machinery. Plaintiff calls attention to testimony to the effect that although the defendant and his managers had observed the operation of the machinery and the perils of the situation, and had provided guards for other parts of the establishment, they failed to provide guards for this machine until after Smith was killed in it. Testimony was offered to the effect that the manager did not think that it was either necessary or practicable to safeguard the rolls where Smith lost his life, and that such machines and places as were known or deemed by him to be dangerous had

Smith v. Bowersock.

been safeguarded. It appears, too, that a number of experts whose testimony was introduced by the defendant testified that it was not practicable to place a guard on the rolls and that it would have interfered with the efficiency of the machinery. Although considerable effort was expended in the trial to show that no liability could attach under the factory act because of it being impracticable to safeguard the machinery, it is now conceded by the defendant that it was practicable to safeguard the machine in which Smith was killed. The present contention is that because of the position of Smith and the control exercised by him he was not within the protection of the provisions of the factory act. That act provides that every person owning or operating a manufacturing establishment must safeguard the machinery and appliances wherever it is practicable, so as to protect the lives and limbs of employees. Only two classes are mentioned in the act— the owner or operator on one side, and the employee on the other. The language of the act shows that it was intended to protect all employees without regard to the rank or grade of their service in the manufacturing establishment. The fact that an employee may be acting as superintendent or foreman, or is superior in some respects to other employees in the establishment, does not place him outside of the class of employees or of the protection which the law was designed to afford. He may have charge of a group of men who are inferior to him in service, or may have charge of a machine or an appliance, and still be an employee within the meaning of the act. In *Rank v. Packing Box Co.*, 92 Kan. 917, 142 Pac. 942, it was contended that the provisions of the act requiring belt-shifters or safe mechanical contrivances for throwing on or off belts or pulleys was intended only for the protection of a workman engaged in shifting belts. The court declined to place so narrow an interpretation on the provision, and it was held that the act was intended to protect other workmen operat-

ing the machine.   The act is entitled to a liberal inter-
pretation with a view of carrying out its manifest pur-
poses, one of which was "to wipe out this narrow and
conditional liability and substitute another."   (*Caspar
v. Lewin,* 82 Kan. 604, 628, 109 Pac. 657.)   The pro-
tection of the statute is given to "all persons employed
or laboring in any manufacturing establishment," and
the rules of the common law as to superior servants do
not apply; nor does assumed risk or contributory negli-
gence enter into the question of liability.   A superin-
tendent, although having larger control than others, is
nevertheless an employee.   In defining the word it has
been said that:

"The term may include an attorney, a bookkeeper, a
builder or contractor, a civil engineer, a clerk, a col-
lector, a day laborer, a drayman, a fireman, an insur-
ance adjuster, a keeper of accounts, a laborer, a
mechanic, an official, a physician, a policeman, a rail-
road conductor, railroad agent, railroad superintend-
ent, those engaged in operating the road, and the like."
(15 Cyc. 1032.)

The expression, "all persons employed or laboring in
any manufacturing establishment," is general and com-
prehensive, and nothing in the provisions of the act
prescribes limitations or indicates a purpose to except
from its operation any one employed there because of
the nature of his employment, his grade or his rank.
Smith did supervise the work done in the paper mill,
but he was subordinate to the owner and his managers.
The condition of the machinery and the peril of operat-
ing near it was open to the observation of the defend-
ant and those who were managing his business.   Smith
doubtless observed and understood the danger, too, and
if assumption of risk and contributory negligence were
defenses in an action under the act the plaintiff would
have found much difficulty in establishing a right of
recovery.   While Smith superintended the details of the
making of paper and the running of the plant, the de-
fendant and his managers controlled the establishment

and the expenditures made in it. An application for an appropriation to safeguard the machinery might or might not have been approved. The fact that the defendant called experts in paper making as witnesses to show that it was neither practicable nor necessary to safeguard the machinery, and that the manager, Hill, testified that places in the mill which he deemed to be dangerous had been safeguarded, and also that in his experience such rolls and machinery were not regarded as dangerous, and his statement that in a number of mills which he had visited rolls like these were not safeguarded, indicates, to some extent, how a suggestion of Smith that they be safeguarded would have been received. In the effort to shift the responsibility for the failure to safeguard the machinery, attention is called to the notice prepared by defendant asking employees to report to the office any machinery, place or tool that they might think should be safeguarded or repaired. This was addressed to each employee in the four establishments operated by defendant, and while the notice appears to have been brought directly to the attention of Smith, it will be observed that the employees were not requested to report to the superintendent, but were required to report to the office, which was in charge of the defendant and his managers. Under the notice, Smith, as well as others employed in the mill, were only requested to make a report of conditions to the office, in order to "assist in reducing accidents to the lowest possible point." An owner or operator can not discharge the duties imposed on him by the statute nor rid himself of liability under the act by posting admonitions to employees or the issuance of instructions to them or the making of rules for their guidance. (Caspar v. Lewin, 82 Kan. 604, 109 Pac. 657.) Cases may possibly arise where a person employed in a manufacturing establishment may not be entitled to claim the protection of the act as against an owner or operator, but certainly nothing appears in the circumstances of

the present case or the relations of the parties which took Smith out of the protection of the act or absolved the defendant from liability for failing to provide safeguards for machinery which it is conceded were practicable and necessary to the safety of employees.

The questions raised upon the instructions are substantially the same as have been already considered, and nothing is found in any of them or in any of the errors assigned which would justify a reversal.

The judgment of the district court is affirmed.